[No. 9487. Department One. September 19, 1911.]

MARY E. DANIELS, *Executrix etc., Appellant,* v. JOSEPH H.
SPEAR *et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—FRAUDULENT CONVEYANCES—AC-
TIONS. The rights of an executor to set aside the fraudulent convey-
ances of the decedent for the benefit of creditors, under Rem. &
Bal. Code, § 1540, are the same as though the creditors were prose-
cuting the action against the fraudulent transferee during the life-
time of the deceased.

FRAUDULENT CONVEYANCES—ACTIONS—LACHES—EVIDENCE — SUFFI-
CIENCY. A transfer of all stock in a corporation will not be held
fraudulent as to creditors where the stock was transferred for a
valuable consideration not so inadequate as to suggest fraud, and

[1]Reported in 117 Pac. 737.

the creditors took no action for fifteen years, knowing that the debtor was in straightened circumstances while the corporation was prospering, and where it was within their power to have discovered that his connection with the corporation as a stockholder had ceased.

Husband and Wife—Community Property—Fraudulent Convey-
ance by Husband—Rights of Wife. Under Rem. & Bal. Code, § 1540 authorizing the executor, if there is a deficiency of assets, to maintain an action for the benefit of creditors to set aside the fraudulent conveyances of the deceased, the widow of the deceased has no interest in the action as an heir, although the property conveyed by the deceased was community personalty, of which the husband had sole control under Rem. & Bal. Code, § 5917; since it cannot be said that she did not receive the benefit of the conveyance.

Costs—Taxation—Witness Fees—Reporting Attendance. Under Rem. & Bal. Code, § 482, requiring witnesses to report their attendance to the clerk each day, costs may be taxed for mileage and one day's attendance, for witnesses who reported their attendance and mileage through the bailiff to the clerk on the last day of the trial.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered September 3, 1910, dismissing consolidated actions to set aside conveyances in fraud of creditors, upon granting a nonsuit, after a trial before the court without a jury. Affirmed.

*Danson & Williams*, for appellant.

*Charles P. Lund* and *Post, Avery & Higgins*, for respondents.

Parker, J.—The plaintiff seeks to have set aside a conveyance of shares of corporation stock made by Henry Brook, deceased, to Joseph H. Spear, which it is alleged was made in fraud of creditors. To that end two separate actions were originally commenced in the superior court for Spokane county. These actions involved three separate corporations which are closely related to each other, not only in their business interests, but in the ownership of their stock. These actions were consolidated and tried in the superior court as one action. At the close of the plaintiff's evidence, the court sus-

tained a motion for nonsuit made by counsel for the defendants and dismissed the cause. Thereupon, plaintiff appealed to this court.

On May 31, 1894, and for some years prior thereto, Henry Brook and Joseph H. Spear were the owners of all of the capital stock of the Washington Brick, Lime & Manufacturing Company, a corporation, amounting to 500 shares, each owning 250 shares. On that day Brook sold and transferred 249 shares of his stock to Spear. The evidence warrants the conclusion that they agreed that one share should remain in the name of Brook upon the books of the corporation for the sole purpose of maintaining the formal corporate organization. It clearly was then intended that Spear was to become the real owner of all the stock. Brook was then, and remained until the time of his death, in 1908, the president of the corporation, so far as the records of the corporation are concerned. Spear was its secretary and general manager during all of this time, and as such directed and managed its affairs. Brook was apparently only president in name, and did not exercise any control over the affairs of the corporation. He, however, continued to render services to it. During all of this time, Spear was the owner of all of the stock, unless it be held that the transfer of the stock by Brook to him in 1894 was void. A short time before the death of Brook, in 1908, he signed the usual blank assignment upon the back of the certificate for the one share remaining in his name. This certificate and blank assignment was placed in the safe of the company with the understanding that it was to be turned over to Spear. It remained in the safe of the company accessible to both Spear and Brook until Brook's death, when it was taken possession of by Spear and cancelled, when he issued in lieu thereof a certificate to himself. He thereby became the record owner of all of the stock.

The original consideration for the transfer of the stock was a promissory note for $9,000, executed by Spear to Brook on May 31, 1894, the day of the original transfer, payable

ten years after date, with interest. Soon thereafter payment
of this note was receipted for by Brook, and it was then
agreed between them that in lieu of this note Spear should
provide Brook with a comfortable living during his natural
life, though no special amount appears to have been then
agreed upon for that purpose. Thereafter, from time to time,
money was paid to Brook until his death in 1908, but without
any apparent system or regularity, except for a short time
before his death, when $250 was paid monthly in accordance
with a later agreement as to amount. These payments were
quite numerous, were made at frequent intervals during this
period, and amounted to approximately $37,000 during the
whole fourteen years. These payments appear to have been
made by the corporation, and are shown upon its books. Dur-
ing all this period, however, Spear seems to have conducted
the business of the corporation as if it was his private busi-
ness, evidently considering that it made no difference, since he
was the owner of all the stock.

In 1894, when Brook transferred his stock to Spear, some
of Brook's creditors were threatening garnishment proceed-
ings against him. As to what extent Brook's financial condi-
tion was impaired at that time does not very satisfactorily
appear from the record, though it may be conceded he was
financially embarrassed, and it may be conceded that one of
the purposes of Brook in making this transfer was to prevent
these threatened garnishments. He also hoped to secure
thereby for himself and family a living in the future. Spear
evidently knew of these purposes when he purchased the stock.
Whether or not there was ever any actual legal steps taken
by any of his creditors looking to the collection or the secur-
ing of their claims is not shown by the record. The claims
here involved were not among those which were threatened to
be enforced by legal proceedings at that time.

We think the facts shown do not warrant the conclusion
that $9,000 was an inadequate consideration for the stock;
and it is plain that Brook received thereafter fully this much

or more from, Spear, through the company, in addition to
what was paid him by the company for services rendered it.
During these fourteen years, Spear drew money from the com-
pany amounting approximately to $125,000. No dividends
were ever declared. Since 1894, the business of the corpora-
tion has grown and its wealth largely increased through the
management of Spear.

On June 19, 1895, Brook executed and delivered to Mrs.
Kate Robinson three promissory notes, aggregating $19,000,
payable October 1, 1895, 1896, and 1897. This was for an
existing indebtedness, some of which probably existed before
the transfer of the stock to Spear, May 31, 1894. There
were paid upon these notes, from time to time, many small
sums, amounting for the most part to $10 and $20 each, and
being a month or two apart. Mrs. Robinson seemed to well
understand that Brook was able to make but small payments
upon this indebtedness. Indeed, the payments seem to have
been prompted rather more by the necessity of her having
some income for support, rather than with any hope on the
part of either her or Brook that the debt would be materially
reduced. They were on very friendly terms.

Brook died in January, 1908, and his wife, Kezia, died soon
thereafter. The plaintiff thereafter was appointed executrix
under their wills. After the death of Brook and his wife, Mrs.
Robinson assigned her claim to W. S. McCrea in considera-
tion of McCrea's agreeing to pay her $25 per month during
her natural life. She was then quite an elderly woman. Mc-
Crea thereafter filed a claim against the estate based upon
these notes. Both Mrs. Robinson and McCrea appear to have
been well acquainted, and upon very friendly terms, with
Brook during his lifetime, and knew in a general way about
his straightened circumstances at all times since 1894, and
also knew that he had some connection with the corporation,
though they did not know exactly what that relation was until
after his death. Their acquaintance with him, however, was
such that they must have had reasons to believe that his in-

terests in the corporation were nothing more than nominal during all these years.

On May 15, 1897, Brook executed and delivered to Sid Rosenhaupt two promissory notes, payable upon demand, aggregating $2,215.95. After the death of Brook and wife, he filed a claim against the estate based upon these notes. He appears to have been well acquainted, and on very friendly terms, with Brook during his lifetime, and knew of his straightened circumstances, and that he had at one time been connected with the corporation, but did not actually know the exact nature of that relation. We have carefully reviewed this voluminous record of approximately 1,000 pages of typewritten matter, and believe that the foregoing summary of the facts is as favorable to appellant's position as can be stated therefrom.

This action is sought to be maintained in the interest of these two creditors of the estate of Brook and wife, under Rem. & Bal. Code, § 1540, which reads as follows:

"When there shall be a deficiency of assets in the hands of an executor or administrator, and when the deceased shall in his lifetime have conveyed any real estate or any right or interest therein, with intent to defraud his creditors or to avoid any right, duty, or debt of any person, or shall have so conveyed such estate, which deeds or conveyances by law are void as against creditors, the executor or administrator may, and it shall be his duty to, commence and prosecute to final judgment any proper action for the recovery of the same, and may recover for the benefit of the creditors of such real estate so fraudulently conveyed, and may also, for the benefit of the creditors, sue and recover all goods, chattels, rights and credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the manner of such fraudulent conveyance."

So far as the right of the executrix to maintain this action is concerned, we are to view respondent Spear's right to this stock in the same light as if Brook and wife were alive and the action were being prosecuted by these claimants directly against Brook and Spear to set aside the conveyance of the

stock and subject it to the payment of these claims. We are not advised by the record as to the ground upon which the trial judge granted the nonsuit, but the arguments of counsel in their briefs indicate that it was because of the laches and neglect of the owners of these notes in seeking to enforce their rights as against this stock. We have seen that the stock was transferred to Spear for a valuable consideration not so apparently inadequate as to suggest fraud; that, at the time of the stock transfer, the notes upon which these claims are now based had not been executed, though possibly a portion of the debts thereby evidenced had been incurred; that, from the time of that transfer until the bringing of this action; 15 years had elapsed; that, from the time of the accrual of the cause of action upon those notes, in the year 1897, to the bringing of this action, twelve years had elapsed; that, during that period, the business of the corporation had grown and its wealth materially increased through the management of Spear; that, while Mrs. Robinson, McCrea, and Rosenhaupt did not actually know of the transfer of this stock in 1894, they did know in a general way of Brook's straightened financial condition during those years, and knew that he had some connection with the corporation, the nature of which was within their power of discovery as his creditors.

It seems to us that the situation here presented is such that the great lapse of time during which these claimants have delayed in seeking the enforcement of their rights as against this stock defeats their present efforts through the executrix to recover the stock from Spear. It has been many times said by the courts, in substance, that the facts and circumstances of each case of this nature must largely govern its determination.

Some contention is made that this action can be maintained by the executrix for the benefit of Mrs. Brook and her estate, independently of the executrix's right under Rem. & Bal. Code, § 1540, above quoted. This is based upon the theory that, since Mrs. Brook died subsequent to her hus-

band, and this stock was community property, she would have the right to have the conveyance set aside as having been made in fraud of her rights. In making this contention, counsel recognize the general rule that a conveyance in fraud of creditors cannot be set aside at the instance of an executor of the deceased who made such a conveyance, except in the interest of creditors, and that it cannot be done in the interest of heirs of the deceased. It is insisted that the rights of Mrs. Brook and her estate rest upon a different and firmer foundation than that of mere heirs of a deceased. Rem. & Bal. Code, § 5917, not only gives to the husband the management and control of personal property, but gives to him a "like power of disposition as he has of his separate personal property." This it seems to us places her right of action in exactly the same situation as that which Brook would have were he alive and seeking to set aside his own conveyance. This, of course, he could not do upon the ground that some one other than himself was defrauded by his conveyance. It is true that she was not his heir in a legal sense, and her right to her share of the community property was not the right of an heir, but his power of disposition of the property was no less absolute as to her rights than if she were his heir. Even if this transfer was fraudulent as to creditors, it was not necessarily so as to his wife. Indeed, it could well be argued in this case that it worked to her benefit, in that it secured a living for her as well as the husband by an income which might have been otherwise greatly impaired.

Error is assigned upon the ruling of the court in taxing costs. In the cost bill of respondents, certain witness fees were claimed. In their motion to retax costs, counsel for appellant sought to have stricken out the fees of these witnesses because they had not personally reported their attendance to the clerk, as required by Rem. & Bal. Code, § 482. The record warrants the conclusion that the witnesses were present on the last day of the trial and reported their attendance and mileage through the bailiff to the clerk. It may be con-

ceded that they did not personally speak to the clerk.   The court allowed the fees for that one day, and also mileage.   We agree with the trial court that this was a sufficient compliance with § 482 requiring witnesses to report their attendance to the clerk at the close of each day's session.

The correct determination of this cause upon the merits is fraught with great difficulty, by reason of the greatly involved facts and voluminous record.   The cause is by no means free from doubt; but, under all the circumstances shown, we cannot see our way clear to disturb the judgment of the trial court.   We therefore affirm the judgment.

DUNBAR, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.