[No. 35106. Department One. April 7, 1960.]

ESTHER GILDESGARD, *Appellant*, v. PACIFIC WAREHOUSE
COMPANY, *Respondent*.[1]

[1]Reported in 350 P. (2d) 1016.

*Shirley N. Holland,* for appellant.

*Elvidge, Watt, Veblen & Tewell,* for respondent.

DONWORTH, J.—Appellant, Esther Gildesgard, instituted this action to recover damages from respondent, Pacific Warehouse Company, for personal injuries sustained by her when she slipped and fell in the hall of the Terminal Sales Building, a building owned and operated by respondent.

Appellant was an employee of the K. R. Cahill Company, a tenant of respondent. She fell in the hall on the second floor of the Terminal Sales Building immediately outside the office of the K. R. Cahill Company, while proceeding from that office to the ladies' rest room across the hall.

Appellant alleges that respondent was negligent in the maintenance and operation of the hallways and floors on the second floor of the Terminal Sales Building where the offices of appellant's employer were located. More particularly, appellant alleges, in her amended complaint:

"III. That on May 15, 1957, at approximately 11:40 A. M., the plaintiff, Esther Gildesgard, was seriously and permanently injured as the direct and proximate result of the negligence of the defendant, Pacific Warehouse Company, in the following manner, to-wit: That in the course of performing her usual and customary duties for her employer, the said K. R. Cahill Company, tenants in Room 102 and Room 205 of the Terminal Sales Building, plaintiff had occasion to leave Room 205, and while using due care for her own safety slipped on the floor in the hall of the Terminal Sales Building directly outside of Room 205, sustaining the serious injuries more particularly hereinafter detailed; the injuries sustained by plaintiff in said hall

resulted solely, directly and proximately from the negligence of the defendant, Pacific Warehouse Company, in that the flooring of the hall outside of Room 205 of the aforesaid Terminal Sales Building is extremely uneven and it slopes in various directions; there are indentations in the linoleum or surface material of the flooring, and the said flooring is highly waxed; the indentations and unevenness of the surface of the flooring further causes the liquid wax used to wax said floors to be concentrated in the said indentations causing certain areas of the flooring to be even more slippery than other areas; that the defendant was further negligent in that the liquid wax was applied carelessly and haphazardly and was applied heavily and unevenly, causing heavy concentrations of wax in certain areas, and in particular in the slopes and indentations on the aforesaid uneven linoleum flooring, and further that after the application of said wax, the flooring was not buffed as is customary and proper to polish and eliminate the surplus wax and/or was not buffed completely, thoroughly or properly or in all areas, and particularly in the sloping and indented areas of said flooring, all of the foregoing causing plaintiff to slip and fall as aforesaid."

The prayer of the amended complaint asks for judgment against respondent in the sum of $26,614.10, together with whatever additional medical expenses and loss of wages that might be incurred by appellant subsequent to the date of the amended complaint, as well as appellant's costs and disbursements in the action.

By answer, respondent denied that it was negligent in any manner and, as an affirmative defense, alleged that appellant was injured through her own negligence. By trial amendment, respondent asserted the further affirmative defense of *volenti non fit injuria*.

The case was tried to the court, sitting with a jury. At the close of appellant's case, respondent moved for an involuntary nonsuit, which was denied. At the completion of respondent's case, the matter was submitted to the jury which returned a verdict for respondent. Appellant filed a motion for a new trial, which was denied, and judgment was entered upon the verdict. Thereafter, appellant filed a motion to retax costs, which was granted in part by the trial court. Appellant then perfected this appeal.

We shall consider the twenty assignments of error in the order in which they are discussed in appellant's brief.

■ Appellant argues her first two assignments of error together. Assignment No. 1 is that the trial court erred in denying appellant's motion for a new trial. Assignment No. 2 is that the trial court erred in refusing to give appellant's requested instruction No. 4, which directed the jury to return a verdict in favor of appellant.

Both assignments are based upon appellant's contention that there is no evidence or reasonable inference from the evidence to justify the jury's verdict.

Appellant contends that the evidence conclusively establishes the negligence of respondent in the following particulars: (1) That the floors in the second-floor hallway were carelessly and haphazardly maintained, in that over a period of years wax and soil were permitted to build up and the regular application of wax was excessively applied and improperly buffed; (2) that the linoleum flooring was worn and defective, particularly so immediately outside the threshhold of room 205, containing dents, seams, and depressions wherein surplus wax was allowed to collect; (3) that on the day appellant was injured, wax had been freshly applied to the floor and had not been buffed, thereby enhancing the slippery character of the floor.

The record does not support appellant's contention. It would serve no useful purpose to detail all of the evidence introduced by both parties on the issue of respondent's negligence. Suffice it to say that the testimony was most conflicting. The three particulars above stated, which were relied upon by appellant as constituting respondent's negligence, were categorically disputed by substantial evidence submitted by respondent.

■ The question of respondent's negligence was clearly one for the jury. The rule to be applied on appeal is found in the following quotation from our decision in *Wines v. Engineers Limited Pipeline Co.*, 51 Wn. (2d) 487, 319 P. (2d) 563 (1957):

"As is not uncommon in suits of this nature, the testimony of the witnesses was in sharp conflict on many factual issues

of vital importance. But, since these appeals are from judgments entered upon verdicts of a jury, we are required to view the evidence most favorable to the successful parties, and all such material evidence must be accepted as true. The verdicts must stand unless we can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom to sustain them. . . ."

Appellant's assignments of error Nos. 3, 4, 5, 6, 7, 8, 12, 13, 14, and 15 relate to the questions of contributory negligence and assumption of risk, or *volenti non fit injuria*. Six of these assignments deal with the trial court's failure to give appellant's requested instructions relating to these issues, and the other four assign error to the instructions which were given by the trial court concerning them.

It is first contended that, as a matter of law, the jury should have been instructed that appellant was not guilty of contributory negligence.

■■ We think appellant's own testimony conclusively defeats this contention. Before reviewing such testimony, it is well to bear in mind that respondent, as the owner and operator of an office building, was not an insurer of the safety of the employees of its tenants. Respondent was only required to maintain the hallways and floors of the building in such condition as a reasonably prudent building operator would deem sufficient to protect from danger persons lawfully using the hallways and floors while exercising ordinary care for their own safety. *Kennett v. Federici*, 200 Wash. 156, 93 P. (2d) 333 (1939). Until such time as she had notice to the contrary, appellant had the right to assume that the floors were in a reasonably safe condition for her to walk upon.

Appellant's testimony reveals that for several years she had felt that the linoleum flooring in the second-floor hall was too slippery; that she had noticed on prior occasions that the floors were frequently left in an unbuffed condition, which made them more slippery than usual; that at least an hour prior to the accident her employer, Mr. Cahill, expressly warned her that the floors appeared to be unbuffed and were slippery (in fact, the jury could have found

from her own testimony that appellant noticed that the floors were unbuffed and very slippery when she first reported for work at 7:45 a.m., nearly four hours prior to her accident); that, although she knew that janitor service was available in the building, she never requested Mr. Cahill to complain to respondent, nor did she ask respondent to remedy the alleged slippery condition of the floors; and that, in walking across the hall to the ladies' rest room, she was not proceeding with unusual haste or emergency.

Thus, even if we were to assume that the floors were *in fact* dangerously slippery on the morning of the accident, appellant, by her own admission, was warned and had knowledge of such dangerous condition *at least* an hour before the accident, and yet she elected to continue walking upon the floors without having first made any attempt to have the slippery condition rectified by respondent. Once appellant had notice of the unsafe condition of the floors, she no longer had the right to assume that they were in a reasonably safe condition to walk upon.

Appellant points to the fact that she was wearing low-heeled, wedgy-type shoes and was proceeding across the floor with unusual care at the time she fell, as conclusively showing that she was not guilty of contributory negligence.

■■ In determining the question of contributory negligence, reasonable care or ordinary prudence *under the circumstances* is the only test. *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P. (2d) 749 (1934). One of the circumstances to be considered by the jury in this case was the fact that appellant had knowledge of the slippery condition of the floor. The jury was entitled to find from the evidence that, under the circumstances, appellant's conduct in encountering a known risk was itself unreasonable and constituted contributory negligence.

■ However, appellant argues that she did not "fully know or comprehend all of the physics and total aspects of the risk involved" nor fully comprehend the extent of the danger because she was not aware of the dents and depressions in the linoleum where the wax had accumulated.

■ It is immaterial whether or not appellant understood all the conditions which might have combined to cause the floors to be slippery. As pointed out by respondent in its brief, the only factor having any legal significance is whether appellant knew and appreciated the danger inherent in a slippery floor. The only danger involved is that of incurring an injury from slipping and falling upon the floors. The jury was entitled to find, from appellant's own testimony, that she fully appreciated such danger, since she testified in considerable detail how carefully she walked on the floors that morning because of their dangerously slippery condition.

■ The same evidence which we have detailed in relation to the question of appellant's contributory negligence is also sufficient to support the trial court's instruction to the jury on respondent's alternative defense of *volenti non fit injuria*.

■ In *Kingwell v. Hart*, 45 Wn. (2d) 401, 275 P. (2d) 431 (1954), we distinguished between the two related defenses of contributory negligence and *volenti non fit injuria* as follows:

". . . But the latter maxim [*volenti non fit injuria*] applies independently of any contractual relationship or of any negligence of the plaintiff or defendant. Contributory negligence or unreasonable conduct on the part of the plaintiff in view of the foreseeable risk, may be confused with the latter defense, where no real consent to relieve defendant of any duty can be found, but plaintiff has exposed himself voluntarily to an appreciated and known unreasonable risk. In other words, an added inquiry appears if contributory negligence also is asserted, that is, was plaintiff's own conduct under the circumstances unreasonable, in view of the foreseeable risk, so that it can be said that there was a breach of duty on the part of the injured person. More than one of these defenses are available to a defendant if pleaded and proven.

"It follows that the inquiry in a tort case, presenting the issues raised on this appeal, may include three questions: Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it ('voluntarily' including the meaning that de-

fendant's conduct has left plaintiff a reasonable election or alternative. . . . [citations omitted]), and (3) was the exposure unreasonable, that is, was it such that a reasonable person in plaintiff's position would not expose himself to it, or, after accepting a reasonable risk, did plaintiff exercise proper care for his own protection against that risk.

"If the first two questions are answered affirmatively, the defense under the *'volenti'* maxim is established regardless of negligence. . . ."

■ Appellant contends that the trial court's instructions pertaining to the maxim *volenti non fit injuria* are erroneous in that they failed to submit to the jury the question of the reasonableness of the risk assumed by appellant and also the question of appellant's care in proceeding across the floor once she had elected to assume a reasonable risk.

Our quotation from the *Kingwell* case, *supra,* clearly shows that appellant's contention is without merit, and that neither of the issues referred to by appellant has any place in an instruction on *volenti non fit injuria.*

■ Appellant finds further fault with the trial court's instructions on *volenti non fit injuria* in that the aspect of voluntary consent to exposure of the risk was not adequately submitted to the jury; that the instructions were repetitive; that in essence they constituted a comment on the evidence.

The fallacy of appellant's arguments can be best demonstrated by quoting instructions Nos. 9 and 10:

"No. 9. I further instruct you that when a person knowingly and voluntarily places herself in a position of peril, when she understands and appreciates the peril, she assumes the risks and hazards of her act, and in the event she sustains injury or damage, she cannot recover for such damages. In other words, if she comprehends the nature and the degree of the danger and voluntarily takes her chances, she must abide the consequences, whether she is fortunate or unfortunate in the result of her venture.

"The foregoing principle of law is applicable and controlling even though the party responsible for the condition was negligent, *provided the injured person knew of and appreciated the danger and voluntarily made her choice.*

"No. 10. If you find that the floor on which plaintiff walked was made dangerous by the negligence of the defendant, and if you further find that the plaintiff knew of this dangerous condition, *you may not, nevertheless, find that the plaintiff voluntarily assumed the risk of walking upon such floors unless you also find that the plaintiff had a reasonable election or alternative. Such election or alternative could be any reasonable action which might cause the danger to be remedied, alleviated or avoided.*" (Italics ours.)

The aspect of appellant's voluntarily assuming the risk was fully and clearly covered. The instructions were not repetitive and most certainly did not constitute a comment upon the evidence.

 Appellant claims that the jury could not have found that she voluntarily assumed the risk, because she was *economically* compelled to assume the risk as her only alternatives were (1) to quit her job; (2) to insist that her employer, Mr. Cahill, request respondent to remedy the slippery condition; (3) to go herself to respondent and request that the slippery condition be remedied. She then argues that, if she had pursued either of the last two alternatives, she would have run the risk of being fired from her job because Mr. Cahill disliked people who complained.

Appellant's assertion that she would be running the risk of losing her job by requesting that the dangerous condition be remedied is solely conjecture on her part. There is no evidence in the record which would indicate that appellant would have lost her job had she requested that the slippery condition of the floors be remedied. Furthermore, our decision in *Ebding v. Foster,* 34 Wn. (2d) 539, 209 P. (2d) 367 (1949), indicates that an employee must even quit work, if necessary, to avoid encountering an obviously dangerous condition. See, also, *Johnson v. North Coast Stevedoring Co.,* 109 Wash. 236, 186 Pac. 663 (1920), where the alleged defect was a slippery floor.

The only real question involved was whether or not a reasonable alternative was available to appellant, and this was a question for the jury to decide in the light of all of the circumstances shown by the evidence.

In support of assignments of error Nos. 10, 11, 16 and 17, appellant contends that the trial court's instructions as a whole, and certain instructions specifically, were prejudicial to her case; were negatively slanted; were redundant; and constituted a comment on the evidence.

We shall not unduly lengthen this opinion by quoting all of the instructions which appellant finds objectionable. We have thoroughly reviewed a record containing over 750 pages of testimony and find that the trial court's instructions are applicable to the issues and the evidence in this case, and correctly state the law. We find no merit in appellant's various contentions with regard to the instructions.

■ Assignment of error No. 9 is that the trial court erred in denying appellant's additional requested instruction No. 4, to the effect that in the exercise of due care for one's own safety a person is not required to do a useless thing or an unreasonable thing in the light of all of the surrounding circumstances.

The instruction requested by appellant has no support in the evidence. The record does not disclose that appellant was ever faced with a choice of doing a useless thing.

■ By assignment of error No. 18, appellant contends the trial court erred in admitting certain testimony of Mattie C. McDonough, respondent's building manager.

On direct examination, counsel for respondent interrogated her as to what her practices were concerning handling complaints of the tenants, and, during the course of the examination, he asked the witness the following question:

"If between the hours of approximately 10:00 A.M. and 11:30 you had received a call from Mr. Cahill or Miss Gildesgard claiming that there was unpolished wax on the second floor, what would you have done?"

Over appellant's objection, the witness was permitted to answer, and she stated that first she would have checked the floor herself to substantiate the complaint, and then, if it were true, she would have had the condition remedied by the janitor.

Appellant objects to the admission of such testimony on

the ground that it is purely conjectural and speculative and based upon hypothetical facts.

This, of course, cannot be denied, and such testimony would have little, if any, probative value. However, we think appellant's objections more properly go to the weight of the testimony rather than to its admissibility. In any event, regardless of what the witness' answer may have been to the question quoted above, it could have no legal importance here. What the building manager would or would not have done in the event such a complaint had been made is of no consequence. Only *appellant's* conduct is of significance here, and the important point is that she failed to complain to the manager, or anyone else, about the slippery condition of the floors. If appellant had been able to show that she had made complaints to the manager on prior occasions without success, then she could argue that to have again complained of the slippery condition on the morning in question would have been a useless act. At the very most, the record reveals only that appellant may have *remarked* to the building manager during the course of conversation on a prior occasion that the floors were slippery. However, there is no evidence that appellant had ever requested that the slippery condition be remedied.

 Assignment No. 19 assigns error to the refusal of the trial court to admit the testimony of Mrs. Cahill as to what her husband's reaction would have been had appellant complained to him.

The testimony was properly excluded since Mr. Cahill was available to testify (and did testify as to other matters) and, assuming its materiality, his opinion as to what he would have done in any given situation would be the best evidence.

Appellant's final assignment of error, No. 20, is directed to the trial court's refusal to retax costs assessed for respondent's witnesses.

 It is first contended that no recovery should be had for such costs because the witnesses' time sheet indi-

cates that the witnesses did not report to the clerk in accordance with RCW 4.84.090.

Appellant does not claim that any of the witnesses for whom costs were taxed were not *in fact* present in the courtroom. The trial court allowed witness fees for witnesses he personally knew were in court. Therefore, the fact that such witnesses did not report to the clerk could not be prejudicial to appellant. In *Daniels v. Spear*, 65 Wash. 121, 117 Pac. 737 (1911), this court held the statute was sufficiently complied with if the information concerning the attendance and mileage of witnesses came through the bailiff to the clerk. In this case, such information came through the judge himself. The statute was sufficiently complied with.

■ It is next contended that appellant should not have been taxed for the daily attendance of Miss McDonough since her testimony was not required every day of the trial.

Miss McDonough was questioned twice by respondent in regard to its case and once by appellant in regard to her case. As manager of the Terminal Sales Building, she was the one most familiar with the over-all operating procedures and it was uncertain as to when her testimony might be required as to any given matter. The fact that the course of the trial made it unnecessary to use the witness every day that she was in attendance is no valid reason for denying the taxation of witness fees for the full time she was in attendance. *Hofstetter v. Sound Trustee Co.*, 67 Wash. 537, 122 Pac. 6 (1912).

■ Appellant also claims that witness fees should not have been taxed for more than one day's appearance of respondent's expert witnesses since their testimony could have been completed in the one day if they had not been interrupted to accommodate the physicians called by respondent.

Surely appellant must recognize the fact that physicians have but very little time to devote to matters outside their medical duties. To accommodate them and their patients, it has become customary to call them to the witness stand as soon as possible after their arrival in the courtroom. If calling such witnesses incidentally has the effect of delaying the

calling of other witnesses, the slight increase in taxable costs occasioned thereby must be borne by the losing party.

The trial court has discretion in matters relating to the taxing costs, and we cannot find any abuse thereof in the instant case.

Having considered each of appellant's twenty assignments of error and having found no reversible error, the judgment of the trial court is in all respects affirmed.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

