[No. 11126–4–I.   Division One.   January 17, 1983.]

STRUCTURALS NORTHWEST, LTD., *Respondent,* v. FIFTH & PARK PLACE, INC., *Appellant,* CANAM HAMBRO SYSTEMS, INC., *Respondent.*

ACTIVE ERECTORS & INSTALLERS, INC., *Respondent,* v. EUGENE HORBACH, ET AL, *Appellants.*

711

*Robert Keolker,* for appellants.

*John H. Strasburger, Andrew Maron,* and *Edward Campbell,* for respondents.

RINGOLD, J.—Defendants Fifth & Park Place, Inc. (Fifth), and Eugene and Joyce Horbach appeal the judgment and decree of foreclosure entered in favor of plaintiffs Structurals Northwest, Ltd. (Structurals) and Active Erectors & Installers, Inc. (Active), and intervenor Canam Hambro Systems, Inc. (Canam). We affirm the judgment but remand for redetermination of costs.

The Horbachs are the sole stockholders of Fifth, which was formed in 1979 for purposes of construction and ownership of the Fifth & Park Building in Renton. Canam is a foreign corporation not doing business in the state of

Washington. It supplies a structural steel joist system known as the Hambro D–500. Structurals is a Washington corporation doing business in King County. Active is a contractor licensed in the state of Washington.

On October 2, 1979, Structurals entered into a contract with Fifth to supply material for use in the "fast track" construction of the Fifth & Park Building. Structurals prepared drawings of the floor system which were approved by Fifth's structural engineers. The engineers submitted the drawings to the Renton Building Department, which also approved them.

Structurals as broker for Fifth contracted with Canam for supply of the Hambro D–500 joist system as specified in the building plans. Canam was to manufacture the joist system and deliver it directly to the jobsite. Delivery of material by Structurals and Canam, as required by Fifth, began on or about October 15, 1979, and ceased on or about December 4, 1979. The material supplied by Canam had a value of $129,000, and together with the other materials supplied under the contract with Structurals totaled $244,676.

In November 1979, at the request and under the direction of Eugene Horbach, Active commenced to perform labor on the construction of the Fifth & Park Building. This labor continued until May 7, 1980. Active furnished union labor, including ironworkers, foremen, carpenters, laborers, and supervisors, who worked under the general supervision of Eugene Horbach in the erection of the building. The total value of the labor supplied by Active for Horbach was $381,881.83.

Structurals filed a complaint for lien foreclosure against Fifth on January 17, 1980. Canam intervened on March 24, 1980, to assert its own materialman's lien. Fifth's answer alleged via counterclaims damages due to defects in the construction system furnished by Structurals and Canam, and the filing of excessive liens by these parties.

Active filed a complaint against Horbach d/b/a Fifth & Park Company on June 24, 1980, to collect on dishonored

checks,[1] foreclose its labor lien, and appoint a receiver. Horbach counterclaimed for damages due to faulty erection of the building by Active. Active's action was subsequently consolidated with that of Structurals and Canam.

The trial of the consolidated action lasted 4 weeks in June 1981, with almost all of the testimony relating to the counterclaims. Following trial, the court made findings of fact and conclusions of law, entered judgment of lien foreclosure against defendants and dismissed the counterclaims.

### TIMELINESS OF APPEAL

The trial court originally entered judgment and decree of foreclosure on November 13, 1981. Thereafter, counsel interlineated certain changes in the judgment and findings to clarify the amount due each party and eliminate the possibility of double recovery. When the interlineations became confusing, on November 18, 1981, the parties stipulated that amended findings, conclusions, and judgment could be entered. The trial court entered the amended findings, conclusions, and judgment on November 23, 1981.

The defendants took this appeal from the November 23 judgment and decree of foreclosure and filed the notice of appeal on December 17, 1981, less than 30 days from the November 23, judgment but more than 30 days from the November 13 judgment. During the pendency of the appeal, Active moved for dismissal due to the fact that the defendants did not timely appeal the November 13 judgment. The commissioner denied the motion noting that the parties had stipulated to the amended judgment. Active moved to modify the commissioner's ruling, seeking clarification of the status of the original judgment. By order of the court, we passed this motion to the hearing on the merits.

---

[1]On January 23, 1980, Eugene Horbach gave Active a check for $8,000, and on January 30, another check for $45,000. Both checks were drawn on the account of Fifth & Park Company and signed by Eugene Horbach. Both checks were returned for insufficient funds.

■ While the stipulation allowing entry of the amended judgment was technically not a motion for amended judgment brought under CR 59, we note that in all practical effect the result is the same as if such a motion had been made and granted. The stipulation was entered within 5 days of the November 13 judgment, as required for a post–judgment motion. CR 59(h). Contrary to the prior practice, RAP 2.4(c) provides for review of a final judgment not designated in the notice of appeal where the appeal is taken from an order deciding a timely post–trial motion to amend the judgment pursuant to CR 59. *See* Comment, RAP 2.4(c), 86 Wn.2d 1150 (1976). RAP 5.2(e) provides that the notice of appeal from such a post–trial order must be filed within 30 days of the order. The official comment to RAP 5.2(e) makes clear that a timely appeal from such an order encompasses review of the underlying judgment: "Rule 2.4(c) allows the judgment to be reviewed upon review of certain post–trial orders. Rule 5.2(e) accommodates Rule 2.4(c) by starting the time running from the date of the entry of the decision on the designated timely–filed post–judgment motions." 86 Wn.2d at 1165 (1976).

The rules of court are designed to "allow some flexibility in order to avoid harsh results"; substance is preferred over form. *Weeks v. State Patrol,* 96 Wn.2d 893, 895–96, 639 P.2d 732 (1982). Treating the November 23 judgment as having been entered pursuant to a motion to amend, we now affirm the commissioner's ruling. The appeal is timely and encompasses the November 13 judgment.

EXCESSIVE LIENS

At the close of the defendants' case the trial court dismissed the counterclaim as to damages caused by the filing of excessive liens. Fifth contends that the trial court erred in dismissing this counterclaim, and argues that the liens should not have been enforced and that a lienor filing an excessive lien is liable in general damages. Fifth claims the liens filed by Structurals and Canam were excessive in two respects: first, that Structurals unduly inflated the amount

of its lien by including amounts also claimed by Canam; second, that the lien amounts included items already paid.

Both Structurals and Canam filed claims of lien on January 17, 1980, Canam's lien for $69,000, and Structurals' lien for $128,439, the amount then showing on its books as owing from Fifth. The latter sum included the $69,000 owed by Fifth to Canam as well as approximately $1,000 which had already been paid by Fifth.

■ The court entered no written findings as to this counterclaim. In the absence of written findings this court may resort to the trial court's oral decision to determine the court's reasons for so deciding. *See Hunt v. Anderson,* 30 Wn. App. 437, 635 P.2d 156 (1981). In dismissing the counterclaim, the trial court stated, "the Court would have to conclude that based on the evidence I have heard that [*sic*] the court cannot find and will not find that was wilfully excessive."

Substantial evidence sustains the trial court's oral finding that the liens were not willfully excessive. Although the amounts overlapped, both Structurals and Canam were entitled to file liens for the amounts due them. The $1,000 overstatement resulted from the fact that Horbach made payments directly to certain material suppliers without notifying Structurals, thus resulting in incomplete bookkeeping entries. Structurals was unaware that these sums had been paid at the time it filed its lien.

■ A materialman's lien will be declared invalid for an excessive amount only if the amount is claimed with an intent to defraud or in bad faith. *CHG Int'l, Inc. v. Platt Elec. Supply, Inc.,* 23 Wn. App. 425, 597 P.2d 412 (1979). There is no evidence in the record tending to establish bad faith on the part of either Structurals or Canam in filing their liens. The burden of establishing bad faith was on Fifth. Absent bad faith or an intent to defraud, the liens were not invalid as excessive. The counterclaims were properly dismissed.

FINDINGS AS TO DEFECTS IN CONSTRUCTION
AND MATERIALS

The trial court found that the construction defects did not result from any negligence or breach of warranty by Active, Structurals, or Canam. Horbach and Fifth contend that these findings are not sustained by substantial evidence. In their brief, in addition to summarizing the evidence favorable to them, appellants state:

> A review of the evidence is required to determine if there is substantial evidence in support of a trial court factual determination. . . . As will be discussed when respondents have had the opportunity to specify the evidence they contend supports the findings, that review will dictate reversal of this case.

Active contends that a respondent has no burden on appeal to come forward with evidence in support of the trial court's factual findings and that the burden is on the appellant to show that the findings were not supported by substantial evidence. Respondents argue that requiring a prevailing party to justify on appeal its victory below, by showing that the losers failed to prove their case, would result in constant trials de novo on the appellate level.

█ The appellants argue that the evidence in favor of their position was "overwhelming." An appellate court reviewing findings based on conflicting evidence, however, need not consider evidence contrary to the findings. The question is, rather, "whether the evidence most favorable to the prevailing party supports challenged findings." *North Pac. Plywood, Inc. v. Access Road Builders, Inc.*, 29 Wn. App. 228, 232, 628 P.2d 482 (1981). That is, was the favorable evidence sufficient "to persuade a fair–minded, rational person of the truth of the declared premise[?]" *Beeson v. ARCO*, 88 Wn.2d 499, 503, 563 P.2d 822 (1977).

Resolution of this question necessarily involves a review of the trial record by the appellate court. To speak of "burden of proof" on appeal is therefore disingenuous. Once an appellant assigns error to a finding of fact and provides this court with the record necessary to determine whether the

finding is supported by substantial evidence, the appellant has satisfied whatever "burden" he may be said to have. Of course, the appellant is required to point out by way of argument and citation to the record support for its position. RAP 10.3(a). It also behooves the respondent to direct the court to substantial evidence in support of the challenged findings.

A plethora of conflicting evidence was presented during the course of the 4-week trial concerning what caused the problems with the building. A review of the 17-volume trial transcript, aided by references to the record provided by counsel, reveals substantial evidence in support of the challenged findings. *Beeson.* These findings will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The trial court did not err in finding the building problems were not the fault of Active, Structurals, or Canam.

### VALIDITY AND AMENDMENT OF LIENS

After trial, and before the entry of judgment, Structurals and Canam moved to amend their liens, which referred to a building situated on "Lots 1–6." The Fifth & Park Building is actually on lots 1–10. The trial court first denied the motions, on the ground that persons not parties to the action might be prejudiced by the amendment, but then reconsidered and allowed the amendment after the plaintiffs stipulated that their liens would be subject to the prior claims of those third parties. Fifth contends on appeal that the trial court erred in allowing the amendment.

RCW 60.04.060 provides in part,

[A claim of lien] shall state . . . a description of the property to be charged with the lien sufficient for identification . . . and such claim of lien may be amended in case of action brought to foreclose the same, by order of the court, as pleadings may be, insofar as the interests of third parties shall not be affected by such amendment.

The only third party interest asserted is that of the holders of a deed of trust on lots 1–10. The lienors, however, stipulated that their liens would be subordinate to this third

party interest, thereby making the deed of trust prior to the liens. Thus, the security interest of the third party is not adversely affected by the amendment or the lien foreclosure. The trial court did not err in allowing the amendment.

## ATTORNEYS FEES

Fifth and Horbach next contend that an award of over $76,000 in attorneys fees on a total judgment of $162,000 is an abuse of the trial court's discretion, which this court should correct by awarding more reasonable fees.

■ A trial court has broad discretion in fixing the amount of an award of attorneys fees. *In re Renton,* 79 Wn.2d 374, 485 P.2d 613 (1971). Discretionary decisions of the trial court will not be disturbed on appeal "except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The court in *Renton* held that the reasonableness of an award of attorneys fees is a factual question dependent on ethical considerations. The current Code of Professional Responsibility provides in DR 2-106(B):

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relation-

ship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

We conclude that the trial court did not abuse its discretion in awarding attorneys fees as permitted under the lien statute. RCW 60.04.130. The amount, supported by itemized affidavits, is reasonable considering the factors set out above and the complexity of the issues raised by the counterclaims.

## WITNESS FEES

■ Fifth and Horbach argue that the court erred in allowing plaintiffs statutory witness fees for certain witnesses on days when they attended the trial but did not testify. Witness fees, however, are not conditioned on actual testimony each day of attendance. *Gildesgard v. Pacific Warehouse Co.*, 55 Wn.2d 870, 350 P.2d 1016 (1960). Appellants have failed to show that the trial court abused its discretion in allowing such costs. *State ex rel Carroll; State ex rel. David v. Dailey*, 23 Wn.2d 25, 158 P.2d 330 (1945).

## DEPOSITION COSTS

■ Fifth and Horbach next contend that the trial court erroneously taxed costs against them for certain pretrial depositions. Structurals and Canam respond that the depositions in question, those of C. Kitchin, E. Horbach, L. Bush, R. Lind, K. Moore, and R. Braunschweig, were actually used at trial, making the costs taxable. Our review of the record shows that only the depositions of Horbach and Bush were used as substantive evidence. The remaining depositions were used only for impeachment purposes; the cost of such depositions is not properly taxable. *Sanderson v. Moline*, 7 Wn. App. 439, 499 P.2d 1281 (1972). We therefore remand this action to the trial court for recalculation of deposition costs.

■ Pursuant to RCW 60.04.130 the prevailing party is entitled to attorneys fees on appeal from a lien foreclosure

action. Where the taking of evidence may be required as to the reasonableness of attorneys fees on appeal, we may remand the case to the trial court for determination of fees on appeal. *Brandt v. Impero,* 1 Wn. App. 678, 463 P.2d 197 (1969). The judgment is affirmed[2] and the cause remanded to the trial court for retaxing of costs and determination of attorneys fees on appeal. Respondents shall recover costs on appeal.

DURHAM, A.C.J., and CALLOW, J., concur.

---

[2]Active further contended on appeal that it should have been able to amend the pleadings to conform to the proof as to a $7,000 claim against Nieman Glass. Active filed no notice of appeal of the trial court's decision and cannot be heard to complain at this time. *Simpson Timber Co. v. Aetna Cas. & Sur. Co.,* 19 Wn. App. 535, 576 P.2d 437 (1978).