

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ANDREA J. CLARE, | ) | |
| | ) | No. 38102-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN P. CLARE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Andrea Clare sought to renew the divorce court's final stalking
protection order. Kevin Clare opposed the renewal. The trial court improperly used the
domestic violence protection order standard to grant the renewal. Under the correct
standard, the trial court's findings do not support renewal. We do not address attorney
fees because they were not awarded by the trial court and we do not address Mr. Clare's
procedural issues because we reverse and remand.

BACKGROUND

At the conclusion of Andrea and Kevin Clare's divorce trial the trial court
imposed an Order of Protection—Stalking pursuant to RCW 7.92.020. Despite certain
concerning behaviors by Mr. Clare during the separation and divorce, such as monitoring
Ms. Clare's location, the divorce trial court did not find domestic violence. The court

imposed the stalking protection order on the basis of civil stalking factors, and not on the criminal stalking factors necessary to find domestic violence. The order was imposed for two years. The original order was not provided as part of this record for comparison.

On January 28, 2021, prior to the expiration of the stalking protection order, Andrea petitioned for renewal with an RCW 10.14.080(5) form requesting a ten year extension. Andrea concedes that Kevin complied with the physical distance requirements for two years. Much of her petition discusses factual issues resolved by the divorce. Post dissolution behaviors cited in her petition include:

(a) "Kevin unnecessarily contacts me on Family Wizard and uses it as a forum to harass me and cause me stress/anxiety associated with kid transfers and/or interpretation of our plan." Clerk's Papers (CP) at 2. Stating that she is "happy to supply various messages if necessary," Andrea fails to actually assert any particular message or attach any Family Wizard message.

(b) Kevin "has made shared parenting harder by disagreeing with everything I say/suggest. He claims we cannot deviate from the plan. He tells me he 'cannot accommodate' any of my suggestions." CP at 2.

(c) Kevin complained when she used the attorneys instead of Family Wizard to communicate about the kids. CP at 3.

(d) The kids reported that Kevin got married and her youngest child called his new wife "mom." CP at 3.

(e) At a child soccer game, date unstated, Andrea noticed Kevin by chance walking a child to the restroom behind where she was sitting and he glared at her. CP at 3.

(f) Kevin filed a legal malpractice action against Andrea. CP at 4. In that action, he filed a witness disclosure naming a witness who would explain how her relationship with George Telquist violated her ethical duties. CP at 4. He also filed a declaration attaching Judge Spanner's inflammatory and embarrassing judicial conduct answer. CP at 4. The judge in the malpractice case issued an order denying sanctions that indicated the witness disclosure and declaration were harassing. CP at 5, 8. Andrea concludes that these two documents constitute "two separate occasions, Kevin's conduct in the malpractice case was found to be harassment." CP at 5.

(g) Kevin filed a bar complaint against George Telquiest, date unstated. CP at 5. Also at an unknown date, her former law partner, Rob McMillen, received an anonymous envelope containing a copy of Mr. Telquiest's motion/brief filed in the bar complaint case asking that Kevin Clare be deemed a vexatious grievant. CP at 5. "Kevin did this to harass me." CP at 5.

(h) Kevin turns his back to his vehicle window during child exchanges to avoid looking in her direction. CP at 5. During one exchange, she was standing behind Kevin's vehicle and he "took his vehicle out of park and put it in reverse so the back-up lights came on." CP at 5-6. Other times, he parks far away from her

during exchanges making the kids walk.  CP at 6.  He also maneuvers his vehicle to avoid her while driving.  CP at 6.

(i) When she fully pays child medical bills in excess of her portion, he requests the provider make refund to her so he can use his health savings account for his ordered portion.  CP at 6.

(j) He contacted her about claiming child care on taxes and asked the name of her child care provider.  CP at 6.

Ms. Clare's reference to a finding of harassment by another court concerns an order entered that denied CR 11 sanctions for two legal documents that were filed by Mr. Clare's attorneys in that collateral matter.  The March 27, 2020, order denying CR 11 sanctions (Sanction order) quotes a declaration of George Telquist referencing divorce findings and the divorce court's stalking protection order.  That quote cites divorce court finding 173 that "Kevin engaged in numerous harassing behaviors since before the parties separated, and throughout this case."  CP at 8-22.  The Sanction order comments "Given the larger case history [the divorce], the inclusion of the sex allegation [in the witness disclosure] is harassing."  CP at 13-14.  Secondarily, it explains that the 2019 "orphan" declaration wrongfully impugns Andrea and Mr. Telquist and was "filed to harass Ms. Clare and Mr. Telquist; if not worse."  CP at 15.

In this case, Andrea Clare filed a memorandum of authorities on February 17, 2021 arguing renewal of the protection order under the Domestic Violence Prevention

Act, ch. 26.50 RCW. The memorandum attaches Judge Lohrmann's January 8, 2020

hearing transcript where the court denied modification of decision making but granted

expanded visitation because Kevin Clare completed DV educational programs.

After a hearing on the matter, the superior court granted renewal of the order, with

the modification that Mr. Clare could no longer contact Ms. Clare directly or through the

Family Wizard application, but instead must communicate issues about the parties'

children through a third person designated by Ms. Clare. In support of its renewal order,

the court made the following findings: "The Respondent has been found to have

committed two separate acts of harassment by the Spokane County Superior Court. This

Court finds such harassing behavior constitutes ongoing acts of Stalking and is Domestic

Violence as defined in RCW 26.50.010(3) which thereby warrants the extension

requested by the Petitioner." CP at 109.

Mr. Clare appeals.

ANALYSIS

Mr. Clare's primary allegation on appeal is that the trial court abused its discretion

by renewing the stalking no-contact order. We agree for two reasons. First, the trial

court based its renewal on a finding of domestic violence under ch. 26.50 RCW, when the

prior order was a stalking no-contact order under ch. 7.92 RCW, in which no domestic

violence was found. Second, the trial court's findings do not support renewal of a

stalking no-contact order. The definition of harassment for purposes of CR 11 sanctions

5

is different from the definition of harassment for purposes of a stalking no-contact order under RCW 7.92.020.

A trial court's decision to grant, renew or extend a protection order is a matter of judicial discretion. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "A court's decision is based on untenable reasons if it is based on an incorrect legal standard or the facts do not meet the requirements of the correct standard." *Id.* at 47 (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.3d 922 (1995); *Juarez v. Juarez*, 195 Wn. App. 880, 890, 382 P.3d 13 (2016).

Where the court held a hearing and weighed evidence, we assess whether substantial evidence supports the court's decision. *In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). "Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Welfare of T.B.*, 150 Wn. App. 599, 607, 209 P.3d 497 (2009). On sufficiency challenge, evidence is viewed in the light most favorable to the responding party on appeal. *Structurals Nw., Ltd. v. Fifth & Park Place, Inc.*, 33 Wn. App. 710, 716, 658 P.2d 679 (1983). Reviewing courts defer to the trial court's determinations on the weight of the evidence, witness credibility and conflicting testimony. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

6

No. 38102-1-III
*In re Marriage of Clare*

Problematically throughout Andrea and Kevin Clare's litigation appeals, the parties often "confuse" the various types of protection orders and their applicable standards. As we noted in *Marriage of Clare*, No. 36814-9-III (Wash. Ct. App. Dec. 28, 2021) (unpublished), www.courts.wa.gov/opinions/pdf/368149_unp.pdf, Andrea Clare petitioned for, and was granted a stalking no-contact order under ch. 7.92 RCW. The trial court explicitly did not find domestic violence when rendering its decision on the dissolution and no-contact order. Despite these explicit findings, Andrea Clare and her attorney continue to argue that the no-contact order and subsequent renewal are governed by the laws concerning domestic violence protection order under ch. 26.50 RCW. While the two chapters have similar procedures and presumptions for renewal, the findings necessary to support the two orders are different. *See* RCW 7.92.130(2) (upon petition for renewal, respondent has burden to show that acts of stalking will not continue); RCW 26.50.060(3) (court shall grant petition for renewal unless respondent proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence).

Whereas domestic violence behavior may generally encompass various acts of stalking, the terms are not interchangeable. For the purposes of a domestic violence protection order under RCW 26.50.010(3), domestic violence stalking is defined by the criminal statute, RCW 9A.46.110. It does not include civil stalking. The definition of civil stalking is broader than the definition of criminal stalking. For purposes of a

7

stalking no-contact order, stalking includes both the criminal definition of stalking under RCW 9A.46.110, and civil stalking conduct involving "repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another" that causes reasonable fear. RCW 7.92.020(4)(c).

In this case, the initial no-contact order was based on acts of stalking that were not found to be domestic violence. *Marriage of Clare*, No. 36814-9-III, slip op. at 8. When a different trial court "renewed" the order, it erroneously found that domestic violence was "ongoing" despite the lack of a domestic violence finding in the underlying order. Thus, it erroneously applied a domestic violence standard in the first instance on renewal. The application of an incorrect legal standard is an abuse of discretion. *Littlefield*, 133 Wn.2d at 46-47.

The superior court also abused its discretion because its findings do not support the renewal of the no-contact order. The trial court based its renewal of the stalking no-contact order on a finding that:

> The Respondent has been found to have committed two separate acts of harassment by the Spokane County Superior Court. This Court finds such harassing behavior constitutes ongoing acts of Stalking and is Domestic Violence as defined in RCW 26.50.010(3) which thereby warrants the extension requested by the Petitioner.[1]

CP at 114.

_____

[1] Andrea Clare argues that this was not the only finding and points to other allegations made in the petition, but the trial court did not find those allegations to be true or sufficient to support renewal of the order.

The collateral findings in a Spokane County matter were made in the context of a motion for CR 11 sanctions. To the extent that the Spokane County Court found certain filed documents to be harassing, the legal standard under CR 11 is different from the definition of harassment under RCW 7.92.020. As we noted above, harassment under the stalking no-contact statute includes a course of conduct involving "repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another" that causes reasonable fear. RCW 7.92.020(4)(c). Under CR 11, an attorney who signs a pleading, motion, or legal memorandum thereby certifies that the document is "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." CR 11(a)(3). As such, the collateral CR 11 findings denying sanction did not constitute findings of harassment for the purposes of a no contact order renewal in this instance.

The trial court abused its discretion by applying the wrong legal standard, and entering findings that do not support renewal of a stalking no-contact order. We therefore reverse the trial court's order and remand for further proceedings. On remand, the parties are free to present evidence and argument to support the renewal or termination of the stalking no-contact order originally entered in April 2019. Because we are reversing the superior court's order renewing the stalking no-contact order, we do not address the remaining issues presented by Mr. Clare.

Reverse and Remanded.

9

No. 38102-1-III
*In re Marriage of Clare*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Siddoway, A.C.J.